## COLLINS *against* PRENTICE.

*Litchfield*,
June, 1842.

Collins
*v.*
Prentice.

| 15 | 39 |
|----|-----|
| 62 | 204 |

| 15 | 39 |
|----|-----|
| 65 | 384 |

If a man having two parcels of land, to one of which he has no access, except over the other, convey such inaccessible parcel, the grantee has a right of way to it over the other parcel, as incident to the grant.

If the owner convey the accessible parcel, retaining the inaccessible one, a right of way to the latter over the former, is reserved to the grantor.

If both parcels be sold, at different times, priority of grant makes no difference with respect to the right of way in the grantee of the inaccessible parcel over the accessible one.

A way of this kind is limited, by the necessity which creates it ; ceasing when that necessity ceases.

A sale by executors, under a decree of probate, does not affect the remaining interest of the heir or devisee less favourably, with respect to a way of necessity, than if the conveyance were made by the owner himself.

The statute of this state authorizing the select-men to lay out private ways, does not change the common law regarding ways of necessity. [The Chief Justice dissenting.]

THIS was an action of trespass *quare clausum fregit*, returnable before a justice of peace.

The defendant pleaded, that he was seised in fee of a certain close adjoining to the *locus in quo*, deriving his title thereto from a deed executed by the executors of *Adino Hale*, the owner of an estate containing both closes, pursuant to an order of the court of probate for the payment of debts ; that after such conveyance, not having any other way to his close than from the highway into and through the *locus in quo*, he had, and of right ought to have, a convenient way to his said close, from said highway into and through the *locus in quo*, to pass and repass at all times of the year, for the necessary use and occupation of his said close ; and that the defendant, having occasion to use said way, for the necessary use and occupation of said close, did, with his teams &c., at the said several times when &c., pass and repass, in and along said way from said highway, into and through the *locus in quo*, to said close of the defendant, and thence back again, in and through said way, to said highway ; doing no unnecessary damage to the plaintiff.

The plaintiff traversed a part of this plea, and then made a new assignment. The defendant joined issue on the part traversed ; and as to the matter newly assigned, pleaded *not guilty*, on which the plaintiff joined issue.

The cause was tried, on these issues, at *Litchfield, August* term, 1841, before *Sherman*, J.

On the trial it appeared, that the *locus in quo* and the defendant's parcel of land mentioned in his plea, were purchased of the executors of *Adino Hale*, in the manner stated in said plea; and that both parcels of land were part of said *Hale's* estate, at the time of his decease, and that such executors, before proceeding under the order of sale, divided the lands of said *Hale* into several small parcels, for the purpose of selling them more advantageously; that on the day of the auction, each piece was put up and sold to various purchasers, the defendant bidding off and purchasing the piece of land mentioned in his plea; that the plaintiff bid off and purchased the piece of land, constituting the *locus in quo;* that these parcels of land were sold, on the same day, in succession, one after the other, and the deeds from the executors to the purchasers were executed and delivered simultaneously.

The plaintiff claimed, and offered evidence to prove, that although the deeds were thus executed and delivered, his parcel was in fact first bid off, and that the defendant's parcel was bid off immediately afterwards. The plaintiff thereupon prayed the court to charge the jury, that if they should find these facts to be true, the defendant could not recover, although he might otherwise have been entitled to a way of necessity over the land of the plaintiff. The court instructed the jury in accordance with this request.

The jury returned a verdict for the plaintiff, to recover 50 cents damages and his costs.

The defendant thereupon moved for a new trial for a mis-direction.

*L. Church*, in support of the motion, contended, 1. That by the principles of the common law, the defendant, in this case, had a right of way from necessity over the *locus in quo*, as incident to his grant. The plaintiff bought his lot subject to a right of way over it to the defendant's. This would have been the case, if *Adino Hale*, in his life time, had sold the *locus in quo* to the plaintiff, and kept the remaining land to himself; as the law will not suppose that he meant to deprive himself of all use of such remaining land; and therefore, it presumes a right of way reserved. 3 *Kent's Com.* 422. &

seq. (3rd ed.) 2 *Selw. N. P.* 1254. (ed. 1811.) *Clark* v. *Cogge, Cro. Jac.* 170. *Dutton* v. *Taylor*, 2 *Lutw.* 1487. *Howton* v. *Frearson*, 8 *Term Rep.* 50. *Holmes* v. *Goring*, 2 *Bing.* 76. *Buckby* v. *Coles*, 5 *Taun* 311. So if the *locus in quo* had been set off to the plaintiff on execution, the owner of the remaining land would have had a way of necessity. *Pernam* v. *Wead*, 2 *Mass. Rep.* 203. 206. *Taylor* v. *Townsend*, 8 *Mass. Rep.* 411. This case is not the less strong because the sale was made by the executors of *Hale*, after his death, under a decree of probate. The rights of the purchaser under such a sale were surely not more absolute than they would have been under an unqualified deed from the owner.

2. That our statute authorizing the select-men to lay out private ways, has not altered the common law in relation to a way of necessity. It is applicable to such ways as the select-men "judge *needful*"—*i. e.* convenient. It does not touch a right of way already existing, by settled principles of the common law. *Stat.* 339. *s.* 11. (ed. 1838.)

*O. S. Seymour*, contra, remarked, that as it is found that the plaintiff's parcel was sold first, the defendant can make out a defence only by maintaining that the grant to the plaintiff, which, in its terms, was absolute, contained an *implied reservation* of a right of way over the land conveyed. If the defendant's parcel had been sold first, the case would have stood differently. He might then have insisted, with some degree of plausibility, upon the principle that every deed must be taken most strongly against the grantor, and that this grantor must be presumed to have intended to confer some beneficial interest, which he would not have done, if the grantee had no right of way to his land. But the claim set up by the defendant, is, not that a right of way passed as incident to the grant, but that a right of way was *reserved* to the grantor, *by implication*, against his own absolute deed. The counsel then contended, that by our law, no such reservation is implied in an absolute conveyance of land.

In the first place, this would be in conflict with the rule of law, that every deed is to be construed most strongly against the grantor.

Secondly, the grantee cannot be supposed to know the situation of the grantor's land, adjoining the land conveyed; but the grantor knows all about it; and he ought therefore to make an *express* reservation, if he means to claim any.

Thirdly, if the grantee should convey to his grantee with covenants, would not the right of way be an incumbrance, for which the first grantee would be liable? Suppose the grantor first sells the rear lot; a right of way is created. He then sells the front lot, with full covenants. The grantee might undoubtedly sue and recover for breach of the covenants. But if the grantee purchases the front land first, while the grantor is the owner of the rear lot, and takes a deed with full covenants, the grantor *by construction* has a way, notwithstanding the covenants.

Fourthly, such implied reservation would be in conflict with the rule of policy in this state, well established, and enforced with unremitting vigilance, requiring the title of land, and the precise state of that title, to appear on our records. But according to the doctrine claimed by the defendant's counsel, the title to a way does not depend upon the terms of the deed, but upon extrinsic circumstances, which do not appear upon the record.

Fifthly, the *English* rule ought not to be adopted here, because it is uncertain and subject to constant fluctuation. The necessity which gives it birth, is the measure of its extent while it continues; and when the necessity ceases, the right, dependent upon it, ceases also. What the owner's necessity requires, and what is the extent of his right, will be constantly a subject of controversy. Is he to be confined to a certain lane or path; or may he pass over any part of the contiguous lot? Must he put up the bars or rails; or may he leave them down? Must he keep the way in repair; or must this be done by the owner?

But sixthly, the necessity, which is essential to this sort of way, cannot exist in this state; for we have a statute authorizing the select-men to establish private ways, in all cases where they are *needful;* and that too upon terms perfectly just and reasonable. *Stat.* 339. (ed. 1838.) When this is done, the way becomes a matter of *record;* and the right is a *definite* one.

Seventhly, the rule in question has never been sanctioned,

by any judicial decision in this state ; and even *English* jurists regret its existence there.

2. That if the preceding proposition is established, the instruction to the jury was correct. For, in the first place, the plaintiff's title was properly considered as first. His *purchase* was first. The delivery relates back to the purchase. Secondly, if the purchases were *simultaneous*, the defendant would get no right of way, unless the court give it to him as *reserved*. In that case, the legal effect would be the same, in this respect, as if the plaintiff's purchase was first made. The defendant takes the burden of proof ; and he must show, that his right of way is superior to the plaintiff's right to the unencumbered fee of his land.

3. That the plea was insufficient. (This point is not material now.)

WAITE, J. The parcels of land owned by the plaintiff and defendant, were formerly a part of the estate of *Adino Hale*. They were sold by his executors, at public sale, under an order of the court of probate, for the payment of debts. Both pieces were sold on the same day, and the deeds were simultaneously executed, by the executors.

To the plaintiff's action for a trespass in crossing his land, the defendant has pleaded a right of way of necessity.

On the trial, the plaintiff claimed, that his land was first bid off at the sale, and prayed the court to instruct the jury, that if they so found, they must find a verdict in his favour, although the defendant might have been entitled to a right of way, had his land been first bid off. The instruction was given in conformity with this request.

It is well settled, as a part of the common law of *England*, that, if a man having a close, to which he has no access, except over his other lands, sell that close, the grantee shall have a way to it, as incident to the grant ; for without it, he cannot derive any benefit from the grant. This rule has been established for more than two centuries, and seems not to have been questioned on the trial. *Holmes* v. *Goring*, 2 *Bing*. 76. *Buckby* v. *Coles*, 5 *Taun*. 311. *Morris* v. *Edgington*, 3 *Taun*. 24. And although doubts have formerly been expressed upon the subject, it seems now to be as well settled, that, if the grantor had reserved that close to himself,

and sold his other lands, a right of way would have been reserved. *Howton* v. *Frearson,* 8 *Term Rep.* 50. *Holmes* v. *Goring,* 2 *Bing.* 56. *Clark* v. *Cogge, Cro. Jac.* 170. *Jorden* v. *Atwood, Owen* 121. *Nichols* v. *Luce,* 24 *Pick.* 102.

The way, in the one case, in contemplation of law, is granted by the deed ; and in the other case, reserved. And although it is called a way of necessity, yet in strictness, the necessity does not create the way, but merely furnishes evidence as to the real intention of the parties. For the law will not presume, that it was the intention of the parties, that one should convey land to the other, in such manner that the grantee could derive no benefit from the conveyance ; nor that he should so convey a portion as to deprive himself of the enjoyment of the remainder. The law, under such circumstances, will give effect to the grant according to the presumed intent of the parties.

A way of this kind is limited by the necessity which creates it. It ceases, when that necessity no longer exists. If a person entitled to such way purchases other lands, over which he can pass to the place to which the way leads, his way of necessity ceases.

If the case is to be governed by the common law, as established in *England,* the instruction given to the jury was erroneous. The distinction which the plaintiff on the trial claimed, does not exist. It makes no difference which land was bid off first, or which was first conveyed.

But there is another view of this case. These conveyances do not appear to have been made by the *owner* of the lands. They were a part of the estate of *Hale ;* and, unless devised by his will, descended to his heirs at law. But the sales were made by the executors, under an order of the court of probate. These executors, as such, had no interest in the lands conveyed. They had merely the power to sell ; and, in the exercise of that power, could not destroy the beneficial interest belonging to the heir, or devisee, in the lands not sold. They could not, by merely selling off the first lot, deprive him of the power of passing to and from the lands in the rear. *Pernam* v. *Wead,* 2 *Mass. Rep.* 203. And if they subsequently sell other lands in the rear of the first lot, the purchaser would be entitled to the same right of way as the owner would have, if no sale had been made.

*Litchfield,*
June, 1842.

Collins
*v.*
Prentice.

But it has been said, the *English* common law is not applicable here, inasmuch as we have a statute authorizing selectmen to lay out private ways; and that, if a man will be so indiscreet as to convey lands, without reserving to himself any way to his other lands, he must be at the expense of purchasing a way in the manner prescribed in the statute.

There is certainly nothing in the statute, which in terms changes the common law upon this subject. And we think there is nothing arising by implication. Private ways may be very needful and proper, which are not strictly ways of necessity. Power, therefore, is conferred upon the select-men to lay out such ways, subject to a right of appeal to the county court.

The relief given by the statute would often be very inadequate. Thus, it is provided, that no highway or private way, laid out by the select-men, through any person's enclosure, who shall declare himself aggrieved by laying out the same, shall be laid open or *occupied*, until the expiration of twelve months after the laying out of such way, that he may have an opportunity of applying to the county court for relief, and time to fence and secure his enclosure. *Stat.* 268. *tit.* 268. *s.* 11. Under this statute, it is in the power of one party to prevent the other from enjoying the way, for at least twelve months.

We cannot believe that the legislature ever intended to deprive a man of the enjoyment of his land, for such a period of time. To justify such a conclusion, there ought to be something explicit to that effect, in the statute.

It is, therefore, our opinion, that a new trial ought to be granted.

In this opinion CHURCH, STORRS, and HINMAN, Js., concurred.

WILLIAMS, Ch. J. dissented, on the ground that our statute had made such provision for private ways, that it seemed to him, that the necessity which gave birth to the common law doctrine in *England*, could rarely exist in this state; and that no facts were found, in this case, which required its application.

New trial to be granted.