[Civ. No. 235. Fifth Dist. June 27, 1963.]

WILLIAM E. DAYWALT, Plaintiff and Appellant, v.
ARDIS M. WALKER et al., Defendants and Respondents.

670

Little, Curry & Hagen and Stanley Rogers for Plaintiff and Appellant.

Woodruff & Williams and Roland S. Woodruff for Defendants and Respondents.

CONLEY, P. J.—The plaintiff, William E. Daywalt, who is owner of a parcel of land on the Kern River near Kernville, sued the defendants to establish a right of way across their neighboring parcels, to enjoin interference with his alleged easement, and for damages; he appeals from a judgment for the defendants. In his complaint he advanced three different theories: he alleged that he had an easement by implication, an easement by grant and an easement by necessity, but because his attorneys recognize that there was substantial, though conflicting, evidence to support the trial

court's findings against the first two theories of easement, they are not urged on the appeal; appellant thus limits his hope for a reversal on the sole ground that he established a right of way by necessity.

In 1949, Orian Campbell, one of the defendants, purchased an extensive parcel of land on both the east and west sides of the Kern River from the Bank of America, acting in a fiduciary capacity for Mrs. A. L. Dalley, the owner. All of this property was in the Kernville area in Kern County and lay immediately north of a subsequently constructed long bridge over the Kern River. We are concerned here only with that part of the purchased land on the westerly side of the river, which is bounded on the east by the Kern River itself, on the south by the river after its change of direction toward the west at a line which corresponded with the center line of the public road easement along which the bridge over the Kern River was constructed, on the west by a midsection line of Section 15, Township 25 south, Range 33 east, M.D.B.&M., and upon the north by property then still owned by Mrs. Dalley, but title to which has since passed to one J. M. Mountain and his associates.

Mr. Campbell sold the northerly part of his land west of the river to appellant and conveyed the property to him by deed dated April 9, 1956. The major part of the remaining parcel owned by Campbell west of the river was sold by him to the defendant Ardis Walker and deeded to him by instrument dated October 23, 1956. Mr. Walker was at that time the owner of a motel on land designated as Lots 22 and 23, which fronted on the public road crossing the long bridge; because of this ownership, Mr. Walker, and through him his grantees, have at all times had access to the highway. But, of course, plaintiff is in a different position. Mr. Campbell kept a small area at the southeast corner of this parcel on the river where a well was located, and as the deeds to the plaintiff and to the defendant Ardis Walker used metes and bounds descriptions, it appears that Campbell also kept a small segment of the land along the river bank itself. Mr. Walker in turn deeded portions of the land to the other defendants, furnishing each of them a right of way in the several conveyances.

Appellant's theory is that when the land was sold to him by Mr. Campbell there was no legally available method open to him to reach his property from any highway or county

road, except over the land retained by Campbell to the south, which, with his own land, had previously constituted one integrated parcel. Respondents' opposition to such contention is twofold in nature: first, it is claimed that it was the understanding of the parties that no easement was to be conveyed by virtue of the sale to Mr. Daywalt, and second, it is urged that there was in fact no existing way over the Campbell property by which anyone could reach a public highway and that therefore there could not possibly arise a way by necessity.

The general principles applicable to ways of necessity are thus stated in 17 California Jurisprudence 2d, Easements, section 16, at pages 112-114, as follows:

"A way of necessity arises by operation of law when a grantor conveys land shut off from access to a road to the outer world by the grantor's remaining land, or partly by his land and partly by that of a stranger. It can arise only when the relation of grantor and grantee exists between the parties, when the dominant and servient estates are under the same ownership at the time of the conveyance, and when a necessity therefor exists. . . .

". . .

"A way of necessity cannot exist except in case of strict necessity; that is, when the claimed way furnishes the only means by which access may be had to the claimant's property. It does not exist where a man can get to his property through his own land, even though that way is steep or narrow, or presents other and like difficulties. The mere fact that the land owned by the claimant is bounded on one side by a road which connects with county roads is alone fatal to the existence of a way of necessity over another road on his grantor's land. And it is immaterial that a roadway on the grantor's land would be a more convenient way for the grantee to reach his property. Even the fact that an available road is impassable confers no more than a temporary right to pass over adjoining land."

In 17A American Jurisprudence, Easements, section 58, pages 668-669, it is said:

"A way of necessity is an easement arising from an implied grant or implied reservation; it is of common-law origin and is supported by the rule of sound public policy that lands should not be rendered unfit for occupancy or successful cultivation. Such a way is the result of the application of the presumption that whenever a party conveys property, he con-

veys. whatever is necessary for the beneficial use of that property and retains whatever is necessary for the beneficial use of land he still possesses. *Thus, the legal basis of a way of necessity is the presumption of a grant arising from the circumstances of the case. This presumption of a grant, however, is one of fact, and whether a grant should be implied depends upon the terms of the deed and the facts in each particular case."* (Italics added.)

*County of Los Angeles* v. *Bartlett,* 203 Cal.App.2d 523, 529 et seq. [21 Cal.Rptr.776], holds as follows:

"It is well settled that the law never imposes an implied easement or an easement by necessity contrary to the express intent of the parties. It appears from the record that the subject property was bounded on three sides by property owned by the grantor named in the deed which conveyed the subject property to appellants' predecessor in title. As we have shown, said deed conveyed no 'right of way, privilege, easement or right whatsoever' over any of the lots contiguous to the subject lot. Thus, the intent of the parties was clearly stated.

"The general rule is stated in 28 Corpus Juris Secundum, section 35, page 696, as follows: '. . . The implication of an easement by necessity is based upon the inferred intent of the parties, which is to be determined from the terms of the instrument and circumstances surrounding the transaction; the implication will not be made where it is shown that the parties did not intend it. . . . Necessity alone without reference to any relations between the respective owners of the land is not sufficient to create this right.'

"All of the cases cited by appellants express the general rule regarding the creation of easements by necessity where the requisite conditions exist and where no contrary intent is expressed by the parties. In *San Joaquin Valley Bank* v. *Dodge,* 125 Cal. 77, 80 [57 P. 687], the court recognized that ways by necessity arise by implication, stating: 'In such cases the grantor impliedly grants a right of way over his land as incident to the purchaser's occupation and the enjoyment of the premises granted.'

" 'An implication of the grant of a way of necessity may arise from the transaction, but the necessity does not of itself create a right of way, though it may be evidence of the grantor's intention to convey one and raise an implication of a grant. The presumption, however, is one of fact, and whether or not the grant is to be implied depends upon the *terms*

*of the deed* and the facts of the case. [Citations.] *The implication will not be made where it is shown the parties did not intend it.'* (Emphasis added.) [Citations.]''

2 Thompson on Real Property (permanent edition) section 539, page 134, states:

"The foundation of the rule whereby a right of way of necessity is held to have been impliedly granted or reserved in deeds is, that it was the intention of the parties to the deed that the grantor should convey, and that the grantee should acquire, the means of enjoying the land conveyed, and, therefore, that he should have access to it over other land of the grantor, if the grantee had no other means of reaching it. 'It is not the necessity which creates the right of way, but the fair construction of the acts of the parties.' ''

In *Penn Mutual Life Ins. Co.* v *Nelson,* 170 Ore. 248 [132 P.2d 979, 981], the Supreme Court of the State of Oregon holds:

"An implication of the grant of a way of necessity may arise from the transaction, but the necessity does not of itself create a right of way, though it may be evidence of the grantor's intention to convey one and raises an implication of a grant. The presumption, however, is one of fact, and whether or not the grant is to be implied depends upon the terms of the deed and the facts in the case. (*Tucker* v. *Nuding, supra* [92 Ore. 319 (180 P. 903)] ; 17 Am.Jur., Easements, § 48, p. 961.) The implication will not be made where it is shown that the parties did not intend it. (28 C.J.S., Easements, § 35, p. 696.) The facts in this case, in our opinion, so far from pointing to such an implication, negative its existence.''

In an opinion written by Chief Justice Rugg in the case of *Orpin* v. *Morrison,* 230 Mass. 529 [120 N.E. 183, 185], he says, concerning the theory of ways by necessity:

"It is, however, a pure presumption raised by the law. The right of way does not pass as appurtenant, because there can be no way appurtenant to one part of an entire tract over another part of the same tract when the whole parcel is in single ownership in fee. It is a strong thing to raise a presumption of a grant in addition to the premises described in the absence of anything to that effect in the express words of the deed. Such a presumption ought to be and is construed with strictness. There is no reason in law or ethics why parties may not convey land without direct means of access, if they desire to do so. When a purchaser has volun-

tarily purchased land knowing its situation fully and that 'he had no access to the back part of it, but over the land of another, it was his own folly; and he should not burden another with a way over his land, for his convenience.' (*Gayetty* v. *Bethune*, 14 Mass. 49, 56 [7 Am.Dec. 188].) There are circumstances in the case at bar which apart from the oral testimony give color to the contention that the parties did not intend a right of way by necessity. But, however that may be, the actual intention of the parties as disclosed by the oral testimony makes it plain that there was express understanding that there should be no right of way over other land of the grantor. Hence there is no right of way to the lot over land of Morrison and Berry.'' (See also *Marrs* v. *Ratliff*, 278 Ky. 164 [128 S.W.2d 604]; *Doten* v. *Bartlett*, 107 Me. 351 [78 A. 456, 32 L.R.A.N.S. 1075]; *Greenwalt* v. *McCardell*, 178 Md. 132 [12 A.2d 522, 525]; *Brasington* v. *Williams*, 143 S.C. 223 [141 S.E. 375]).

 The trial court in this case found that when plaintiff purchased his land he ''. . . knew that there was no access to said portion of said property so purchased by the plaintiff over and across the property retained by the defendants Orian Campbell and Gladys Campbell and the existence of such access was not warranted to the plaintiff, nor represented to the plaintiff as existing, nor did the plaintiff rely on the existence of such access,'' and further, ''That the plaintiff purchased the real property described in Exhibit B attached to [the] complaint on file herein with full knowledge and acquiescence in the fact that any access to said real property so purchased by the plaintiff must be obtained by the plaintiff, if any should be obtained, across property belonging to others than defendants herein.'' The findings on this subject are equivalent to an adjudication that upon weighing and considering all of the facts surrounding the sale of the property the court determines that the actual understanding and intent of the parties was to exclude any right of way over the land retained by Campbell. The trial court's position in this respect is further reinforced by the finding that at the time of the sale by Campbell to Daywalt there was in fact no possible physical basis for an easement to any public road or highway from the land sold to Daywalt over the land retained by Campbell. If two parcels joined and temporarily constituting one are both landlocked, an essential condition for the creation of a way of necessity is nonexistent, because if both parcels are cut off from a public road, the

basic reason for the creation of a way of necessity, namely, to permit communication with the outside world, is not present.

Substantial support is given to these findings by the testimony in the record, including that of Mr. Campbell; he said that he never had a right of way from any of the land which he owned west of the river to a public road, that he either had to enter it over government property from the north or across some other person's property from the south by trespass, license or agreement; he supported this statement by pointing out that the center line of the section which constituted the westerly boundary of his land did not strike the public road at the bridge over the Kern River, but went under the bridge some 40 feet east of the west entrance to the bridge and that the riverbed at that point was 15 to 20 feet below the level of the roadway. Additional evidence by defendants' witnesses supported the finding that there was no way which Mr. Campbell had of reaching the public road from the property retained by him after the sale to Daywalt without trespassing upon the land of other persons or obtaining their permission to cross intervening territory.

Summarizing, we have a situation in which the trial court found upon substantial evidence that the parties to the transaction by which Mr. Daywalt became owner of his land never contemplated or intended that there should be a right of way by necessity or otherwise over the land retained by Campbell, and as a physical fact that there was no access to a public road over the retained Campbell property. These findings compel the conclusion that no right of way was created by necessity on behalf of Mr. Daywalt.

We must examine another finding of the court. If a way of necessity had arisen, it would have persisted only so long as the necessity existed; if a later legally useable means of access had been created, the way of necessity would have been eliminated. The defendants in this case contended that such a legally useable way other than the alleged way of necessity did in fact come into being through the construction of a road contiguous to, or near, the northern boundary of plaintiff's property.

The applicable general rule is thus stated in 28 Corpus Juris Secundum, Easements, section 54(b), pages 718-719, as follows: ". . . a way of necessity ceases as soon as the necessity to use it ceases. Accordingly, a right of way of necessity ceases when the owner of the way acquires a new

means of access to his estate, as where he acquires other property of his own over which he may pass, or where a public way is laid out which affords access to his premises; and the fact that a former way of necessity continues to be the most convenient way will not prevent its extinguishment when it ceases to be absolutely necessary.''

This rule is in conformity with California law. (*Martinelli* v. *Luis*, 213 Cal. 183 [1 P.2d 980]; *Cassin* v. *Cole*, 153 Cal. 677 [96 P. 277]; *Kripp* v. *Curtis*, 71 Cal. 62, 65 [11 P. 879]; *Carey* v. *Rae*, 58 Cal. 159, 163; *Blum* v. *Weston*, 102 Cal. 362, 369 [36 P. 778, 41 Am.St.Rep. 188].)

■ Logically, it would seem that the burden of proof would be upon defendants, who claimed that a right of way by necessity was thus abolished, to show by acceptable evidence that a new right of way was in fact made available to the plaintiff.

■ The court made the following finding applicable to the situation: ''That it is not necessary for the plaintiff to use the defendants ['] land to obtain ingress and egress to the plaintiff's land.'' Though not a very explicit or satisfactory finding, its underlying meaning must be that the court was of the opinion that a roadway referred to in the record which was north of the northerly boundary of the plaintiff's land furnished plaintiff a legal means of entry to, and exit from, his parcel.

There was a confusing diversity of evidence on the subject, with important gaps in the essential proof. In the area north of the northerly line of plaintiff's land and extending toward the west from the westerly line of plaintiff's parcel, Kern County had built over federal government land an oiled road which connected with a highway still further west; there was an easterly continuation of this road for about 50 feet east of the center line of the section in an area north of the northerly boundary of the plaintiff's property; this extension of the county road was oiled for 4 or 5 feet and then became a sandy roadbed. There is also evidence without substantial contradiction that this roadbed was not immediately contiguous to the northerly boundary of plaintiff's land, there being a gap of at least 5 feet between the northerly boundary of plaintiff's land and the southerly edge of the road. There is no legally sufficient evidence that this extension of the roadway was dedicated to the public, or that anyone other than the owners of the land over which the roadway runs and their licensees have any right to use it. Further-

more, if there was a dedication there is no proof as to the width of the right of way as distinguished from the roadbed or whether the right of way actually is contiguous to the northern boundary of the plaintiff's property. Obviously, the evidentiary backing for this finding is incomplete.

However, this impropriety does not compel a reversal of the judgment, because for the reasons heretofore assigned, the trial court's finding that there never was a right of way by necessity must be upheld.

The judgment is affirmed.

Brown, (R. M.), J., and Stone, J., concurred.